ORIGINAL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 05/30/06

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In the Matter of
    DELPHI CORPORATION            No. 06 Civ. 863 (LTS)(RLE)

## MEMORANDUM OPINION AND ORDER

Appellants, Teachers' Retirement System of Oklahoma, et al., who are creditors and parties in interest in a Chapter 11 proceeding appeal from an order of the United States Bankruptcy Court for the Southern District of New York (Drain, J.) authorizing the retention of Deloitte & Touche LLP ("Deloitte") to perform the audit of the Debtor-Appellee automotive supplier's 2005 financial statements. Appellants assert that the retention order should be vacated because the Bankruptcy Court made factual inferences based on an absence of evidence, had precluded Appellants from taking discovery on the issues that formed the basis of the Bankruptcy Court's ruling, and because Deloitte has conflicts of interest such that it can not be considered disinterested (within the meaning of 11 U.S.C. § 110(14)) or competent to perform the audit. The Court has jurisdiction of this appeal pursuant to 28 U.S.C. § 158(a)(1), and has reviewed thoroughly the parties submissions and arguments. For the reasons that follow, the retention order is affirmed.

### Background

On October 8, 2005, Delphi Corporation ("Delphi") and certain of its U.S. subsidiaries[1] filed voluntary petitions for reorganization relief under Chapter 11 of the Bankruptcy Code. Three additional U.S. subsidiaries of Delphi filed such petitions on October 14, 2005. Following an SEC inquiry and internal audit committee investigation of significant accounting

---

[1]      Delphi and its debtor-affiliates are referred to herein as "Debtors" or "Appellees."

Faxed
Copies mailed to Appellants, picked up by Appellees +
Chambers of Judge Swain faxed to J. Drain
5/26/06

errors, Debtors restated their financial statements for the years 1999-2004. Deloitte was the Debtors' independent auditor for the years 1999 through 2004, and had issued unqualified opinions regarding the original statements.

On November 9, 2005, Debtors filed an application for an order approving the retention of Deloitte as the Debtors' independent auditors "for [the] fiscal year ending December 31, 2005 and thereafter." Appellees' Brief at 7. On November 23, 2005, the Debtors filed a revised application seeking to retain Deloitte as the auditor for their 2005 financial statements and announced that they had retained Ernst & Young LLP ("Ernst & Young") as their auditors for 2006. Debtors maintain that the decision to retain Ernst & Young was the result of a process that included soliciting proposals from all of the "Big Four" accounting firms,[2] including Deloitte, and that Ernst & Young was chosen "in light of [their] expertise with companies undergoing reorganization and with tier-one automotive suppliers in particular." Appellees' Brief at 7-8. In support of their revised application, the Debtors filed several affidavits and declarations concerning Deloitte's status as a "disinterested person" under sections 327(a) and 110(14) of the Bankruptcy Code.

On December 2, 2005, Appellants, who are the lead plaintiffs in a private securities class action lawsuit against Delphi and others relating to the accounting irregularities, objected to the revised retention application. Appellants sought discovery concerning the identities of Deloitte personnel who had worked pre-petition, and were expected to work post-petition, on Debtors' financial statements, the information relied upon by Delphi's Audit Committee in determining that Delphi had inadequate accounting controls in relation to the transactions that were ultimately restated, documents relating to Delphi's original and restated financials, and documents relating to

---

[2]   Ernst & Young, Deloitte, KPMG, and PriceWaterhouseCoopers are commonly referred to as the "Big Four" accounting firms.

Delphi's decision not to retain Deloitte for 2006. Appellants also sought to depose members of Delphi's Audit Committee. Debtors objected to the document requests and deposition notices but agreed to the deposition of Robert Dellinger, Delphi's Chief Financial Officer, which took place on December 20, 2005.

On December 23, 2005, Appellants filed a motion to compel deposition testimony and production of documents seeking, among other things, "thousands of documents, responses to interrogatories, a second deposition of Mr. Dellinger or another deponent to provide information regarding various matters and the deposition of the members of the Audit Committee." Appellees' Brief at 11. Following a January 5, 2006, hearing on the motion to compel, the Bankruptcy Court denied Appellants' motion in substantial part and granted Debtors' cross-motion for a protective order, but did authorize a deposition of one member of Delphi's Audit Committee with respect to

> the decision to replace [Deloitte] as the Debtors' auditors for their financial statements for the year ended December 31, 2006 and thereafter and the decision to continue to retain [Deloitte] as the Debtors' auditors for their financial statements for the year ended December 31, 2005.

January 10, 2006 Order Granting in Part and Denying in Part Plaintiffs' Motion to Compel and Granting in Part and Denying in Part Debtors' Motion to Quash and for a Protective Order, Appellants' D-16, at 2-3.

The court further directed that "[t]he deposition shall not inquire into the details of the Audit Committee's investigation of [Deloitte], if any, or the details of [Deloitte's] past history with the Debtors." Id. at 3.

Robert Brust, a member of the Audit Committee, was deposed pursuant to this authorization on January 13, 2006. The court also quashed trial subpeonas that Appellants had issued to Audit Committee members in connection with the hearing on the objection to the retention

application. Id. at 3. In explaining its decision to limit the scope of discovery, the Bankruptcy Court accepted the Debtors' certification or representation that the Deloitte audit team for the 2005 engagement is different from the earlier team, such that "the issue of whether the audit will be conducted competently should really focus on that team as opposed to what happened in the past." Transcript of January 5, 2006, Hearing Before Judge Drain ("Jan. 5 Tr."), Appellant's D-14 at 111. "[W]ith regard to the conflict of interest issue," the court continued,

> I think . . . that short of actually proving that there [was] something truly wrong here that would justify a claim by the debtors, there's not much more that discovery could show as far as a potential conflict of interest because the very fact of the restatement suggests that there is some potential conflict of interest here. I don't believe that the debtors, given the limited context of the relief that they are seeking, which is to retain Deloitte to complete the 2005 audit, should be put to the level of discovery that would be required to determine once and for all whether, in fact, Deloitte is liable to the debtors or not. I don't believe that's necessary for me to consider the application under sections 328 and 327 [of the Bankruptcy Code].

Id. at 112.

The Bankruptcy Court further explained that the limited authorization of the deposition of a member of the Audit Committee was appropriate in order to provide the court with information regarding Delphi's decision "to seek to retain some other firm besides Deloitte, since I believe that that decision-making process is one that I should have the benefit of when I consider an objection to Deloitte's retention for the limited purposes of completing the 2005 audit and I don't believe, based on reading Mr. Dellinger's deposition, that he's sufficiently knowledgeable on that issue." Id. at 113.

The Bankruptcy Court held an evidentiary hearing on the retention application on January 13, 2006. The Debtors proffered the affidavits and declarations they had submitted in support of their retention application in lieu of the direct testimony of those witnesses (Deloitte Partner Brock E. Plumb and Debtors' CFO, Robert Dellinger). The live testimony at the hearing

included cross-examination and redirect testimony of Messrs. Plumb and Dellinger. At the conclusion of the evidentiary hearing, the Bankruptcy Court rendered a lengthy and detailed oral opinion finding that Deloitte met the relevant requirements of disinterestedness and competence, and approving the retention application. A written order authorizing the retention of Deloitte was signed on January 17, 2006.

Appellants contend that Judge Drain's order approving the retention of Deloitte to complete Debtors' 2005 audit cannot be allowed to stand because his conclusions as to disinterestedness and competence were based on inferences drawn from an absence of information in the record, and that such absence was the result of his refusal to permit Appellants' pursue the full scope of their proposed discovery.

Discussion

On appeal, a district court reviews bankruptcy court retention and discovery orders for abuse of discretion. See In re Manshul Const. Corp., No. 97 Civ. 4295, 1998 WL 405039 (S.D.N.Y. Jul. 20, 1998) (citing In re Federated Dep't Stores, Inc., 44 F.3d 1310, 1315 (2d Cir.1995)) and In re Integrated Resources, Inc., 147 B.R. 650, 664 (S.D.N.Y.1992). An abuse of discretion may only be found where (1) the decision was based on an erroneous conclusion of law; (2) the record contains no evidence on which the judge could have based his decision; or (3) the supposed facts found are erroneous as found. See In re Integrated Resources, Inc., 157 B.R. 66, 72 (S.D.N.Y.1993).

The district court reviews the bankruptcy court's factual findings for clear error. See Fed. R. Bankr. P. 8013. A bankruptcy court's finding of fact is clearly erroneous only if the appellate court is left "with the definite and firm conviction that a mistake has been committed." Anderson v. Bessemer City, 470 U.S. 564, 573 (1985) (internal citations and quotation marks omitted). The role of "the reviewing court under this extremely deferential standard of review is not to decide disputed

factual issues de novo or to reverse simply if we would have decided the case differently, but rather to determine whether the district court's account of the evidence is plausible in light of the record viewed in its entirety." U.S. v. Rizzo, 349 F.3d 94, 98 (2d Cir. 2003).

Judge Drain correctly determined the relevant standard for retention under section 327 of the Bankruptcy Code and the section 110(14) disinterestedness requirement. Section 327 required the Court to examine whether Deloitte "[held] or represent[ed] an interest adverse to the estate, [or was] a disinterested person[]." 11 U.S.C. § 327(a). Judge Drain referenced Section 101(14) of the Bankruptcy Code, which defines "disinterested person." In determining that Deloitte was disinterested and did not have an adverse interest, he cited to the Second Circuit opinion of In re AroChem Corp., 176, F.3d 610 (2d Cir. 1999) for the proposition that an adverse interest is one that causes a professional "to possess or assert an economic interest that would tend to lessen the value of the bankruptcy estate or that would create an actual or potential dispute in which the estate is a rival claimant." Id. at 623. He also cited to In re WorldCom, Inc., 311 B.R. 151 (Bankr. S.D.N.Y. 2004) (for the proposition that an interest is not considered adverse "simply because it is possible to conceive of a situation where interest might clash" (Transcript of January 13, 2006, Evidentiary Hearing Before Judge Drain ("Jan. 13 Tr."), Appellant's D-17 at 143)), and In re Leslie Fay Cos., Inc., 175 B.R. 525 (Bankr. S.D.N.Y. 1994) (for the proposition that a potential conflict may become disabling if it provides a professional with meaningful incentives to act contrary to the best interest of the estate or is sufficient to place the estate at more than an acceptable risk that it would be reasonably susceptible to such conduct. Id. at 533.)

The Retention Determination

Appellants argue that, in approving the application to retain Deloitte as the auditor for

the 2005 statements, "the Bankruptcy Court considered issues that had not been properly developed in the factual record because of the its [sic] discovery rulings that had specifically prevented inquiry into those very same issues," and was therefore "forced, at the hearing, to draw inferences from the testimony of individuals - Dellinger and Plumb - who had no personal knowledge of the relevant facts." Appellants' Brief at 14 and 16. The Court's factual findings were thus, Appellants argue, clearly erroneous, "because they lacked any substantiation in the record." Id. at 17. Specifically, Appellants argue that the Bankruptcy Court made two findings of fact that were clearly erroneous: that the senior audit partners who had been involved with the accounting problems that led to the 2005 restatement had been removed from the 2005 audit team, and that the Debtors had not considered Deloitte's past performance as a basis for hiring Ernst & Young to replace Deloitte as Debtors' independent auditor for 2006 (thus inferring that Deloitte was sufficiently competent and disinterested to perform the 2005 audit.) Appellants' Brief at 17.

The Bankruptcy Court determined, over Appellants' objection, that Deloitte met the disinterestedness requirements of sections 327(a) and 101(14) of the Bankruptcy Code, focusing on the requirement that Deloitte not "have an interest materially adverse to the interest of the estate." See 11 U.S.C. § 101(14)(E). Acknowledging Appellants' argument that Deloitte had such an adverse interest, or conflict, by way of a motivation to do a less than diligent job on the 2005 audit in order to cover up or prevent further disclosures of past wrongdoing on its own part, the court found: that it was inappropriate, in light of the record before it, to infer from Debtors' decision to change auditors for 2006 that Debtors perceived such a conflict; that the individuals "making all judgment calls in respect of the audit were not the specific individuals involved in the audit work done by Deloitte for the years that have been restated"[3]; that those individuals "frequently discuss

---

[3] Jan. 13 Tr. at 150.

their judgment calls with [Delphi's CFO] Mr. Dellinger, and he with them"[4]; that, because the offending audit work principally related to audits of the already-restated 2000 and 2001 years and the engagement under consideration related only to completion of the 2005 audit, Deloitte would not have opportunities to "undo or cover-up in respect of those prior years;"[5] and that Mr. Dellinger, "who would be overseeing from the company's side the audit, as well as the [Debtors'] CEO, were not involved in the years that were restated". Jan. 13 Tr. at 145-154. These factual conclusions are supported by the record and are not clearly erroneous. In reaching his legal conclusion that the alleged conflict argued by Appellants was "a mere potential conflict, as opposed to a disabling conflict,"[6] Judge Drain also made the following comment:

> Moreover, in looking at the allegations as detailed in the complaint and, in particular, in paragraphs 2a through e of the class plaintiffs' objection, it appears to me, and there was not much contradiction of this at the hearing[,] that the particular alleged accounting improprieties that Deloitte was allegedly responsible for or had a share in went beyond the types of judgment calls that accounting firms at a relatively senior level make. In other words, it does not appear to me, based on my review of the record, such as it is, that the alleged problem with Deloitte is an inability to conduct proper forensic procedures or turning a blind eye to what one would colloquially understand to be a fraud, but rather an allegation or allegations with respect to judgment calls that now would be made by different parties at Deloitte and made those earlier calls.

Jan.13 Tr. at 152-53.

Appellees contend that Judge Drain was merely characterizing the allegations of the class action complaint; Appellants contend that the foregoing passage is indicative of a clearly erroneous – because unfounded in the record – finding that the accounting improprieties were the

---

[4] Id.

[5] Id. at 152.

[6] Id. at 153.

result solely of judgment calls made by senior people no longer involved in the engagement, rather than the result of conduct more sinister or systemic. Appellants further argue that, because Judge Drain precluded them from taking discovery as to the work done by Deloitte pre-petition and the staffing of Deloitte's Delphi engagement over time, his determination to approve the proposed retention must be vacated and further evidentiary proceedings had. Appellants' effort here fails because, as explained above, the Bankruptcy Court's conclusion as to disinterestedness was made by applying the correct legal standard and was based on a number of findings that were supported by the record and not clearly erroneous; even if the foregoing passage could be construed in the way advanced by Appellants, any error with respect to the degree to which "judgment calls" or the staffing of the engagement below the senior level were relevant to the past errors is insufficient to render erroneous the court's determination on the retention application.

The Bankruptcy Court also considered the questions raised by Appellants as to whether the retention application should be denied because Deloitte was incompetent to take on the engagement "in . . . light of Deloitte's prior work and the deficiencies alleged in the class action complaints and the fact that there was a material restatement of the financials for prior years." Jan. 13 Tr. at 154. In addition to considering Appellants' proffered inference and whether there were other suitable accounting firms that could have taken on the 2005 engagement (see id. at 155), the Bankruptcy Court specifically determined, based on the hearing testimony, that "Deloitte as a firm [is] fully capable of performing the 2005 audit, [and] that the particular audit team, as headed up by Mr. Plumb and Mr. Steiner, is qualified as well to perform that audit." The court went on to detail the evidence it had considered concerning the qualifications and roles of the Deloitte and Delphi representatives who would be involved in the effort. In light of these factual conclusions and the Bankruptcy Court's application of the correct legal standard in evaluating the competency issue, any

paucity of the record with respect to whether Delphi at any time considered Deloitte's past performance in connection with its determination to change auditors is insufficient to render erroneous the Bankruptcy Court's conclusion that Debtors had met their burden of demonstrating that they used appropriate judgment in finding Deloitte competent to complete the 2005 financial statements.

The Bankruptcy Court's factual conclusions are supported by the record and its determination that "this basis for objecting to [Deloitte's] retention is not sustained and that the debtors have carried their burden of showing that first, they have exercised proper judgment in retaining [Deloitte] for the 2005 audit [a]nd second, that [Deloitte] meets the standard of disinterestedness and not holding and adverse interest set forth in Section 327[(a) of the Bankruptcy Code]" does not constitute an abuse of discretion.

### The Discovery Order

As explained above, a district court reviewing a bankruptcy court's discovery order on appeal does so under an abuse of discretion standard. Having considered carefully the parties' arguments below, their positions advanced here and Judge Drain's determinations, the Court concludes that appellants have failed to carry their burden of demonstrating that the Bankruptcy Court abused its discretion in making the challenged discovery determinations.

### Conclusion

For the foregoing reasons, the January 18, 2006, Order of the United States Bankruptcy Court for the Southern District of New York (Drain, B.J.), in Chapter 11 Case. No. 06-683, which authorized the retention of Deloitte & Touche LLP to perform the audit of the Debtors'

2005 financial statements is affirmed. The Clerk of Court is respectfully requested to close this matter.

SO ORDERED.

Dated: New York, New York
May 26, 2006

LAURA TAYLOR SWAIN
United States District Judge